SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PAUL S. COWIE, Cal. Bar No. 250131
MELISSA HUGHES, Cal. Bar No. 315727
JULIA G. REMER, Cal Bar No. 330559
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
Email         pcowie@sheppardmullin.com
              mhughes@sheppardmullin.com
              jremer@sheppardmullin.com

Attorneys for Defendant ALASKA AIRLINES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE CREER, an individual, on behalf of herself and others similarly situated,<br><br>    Plaintiff,<br><br>    v.<br><br>ALASKA AIRLINES, INC., an Alaska corporation; and DOES 1 through 50, inclusive,<br><br>    Defendants. | Case No. 3:24-cv-3780<br><br>**DEFENDANT ALASKA AIRLINES, INC.'S NOTICE OF REMOVAL**<br><br>[*Removed from San Francisco Superior Court, Case No. CGC-23-610836*]<br><br>Complaint Filed:  December 6, 2023 |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HER COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that Defendant Alaska Airlines, Inc. ("Defendant") hereby removes the action *Michelle Creer, et al. v. Alaska Airlines, Inc.*, pending in the Superior Court of California, County of San Francisco, Case No. CGC-23-610836, to the United States District Court for the Northern District of California. Removal is based on the Class Action Fairness Act ("CAFA"). This Court has original subject matter jurisdiction over Plaintiff Michelle Creer's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d)(2), 1441, 1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

### STATEMENT OF JURISDICTION UNDER CAFA

1. This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant.

2. Each of the foregoing conditions were satisfied at the time this action was initiated and now at the time of removal.

### CLAIMS AND PROCEDURAL HISTORY

3. On or about December 6, 2023, Plaintiff filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of San Francisco, Case No. CGC-23-610836 (the "Complaint"). On December 13, 2023, Plaintiff served a copy of the Summons, Civil Case Cover Sheet, Complaint, Superior Court of California County of San Francisco Alternative Dispute Resolution Information Package, and Notice of Case Management Conference, on Defendant. Attached hereto as **Exhibits A-E** are true and correct copies of the Summons, Civil Case Cover Sheet, Complaint, Superior Court of California County of San

Francisco Alternative Dispute Resolution Information Package, and Notice of Case Management Conference.

4. Plaintiff's Complaint asserts claims arising out of her employment with Defendant for: (1) Failure to Pay Minimum Wage for All Hours Worked; (2) Failure to Pay Wages and Overtime under Labor Code § 510; (3) Meal Period Liability under Labor Code § 226.7; (4) Rest-Break Liability under Labor Code § 226.7; (5) Violation of Labor Code § 226(a); (6) Violation of Labor Code § 221; (7) Violation of Labor Code § 204; (8) Violation of Labor Code § 203; (9) Failure to Maintain Records Required under Labor Code §§ 1174, 1174.5; (10) Failure to Produce Requested Employment Records under Labor Code §§ 226, 1198.5; (11), Failure to Reimburse Necessary Business Expenses under Labor Code § 2802; and (12) Violation of Business & Professions Code § 17200 *et seq*.

5. Plaintiff's Complaint is styled as a putative class action under Code of Civil Procedure § 382. Plaintiff seeks to represent a putative class of "all individuals employed by Defendants at any time during the period of four (4) years prior to the filing of this lawsuit and ending on a date as determined by the Court ("the Class Period"), and who have been employed as non-exempt, hourly employees within the State of California." ("Putative Class"). (Complaint, ¶ 46.) Plaintiff's Complaint provides that the Putative Class includes "all hourly air-transport and customer service employees and those in similar and related positions." *Id.*

6. Plaintiff further seeks to represent the following Subclasses: (1) "Minimum Wages Subclass. All Class members who were not compensated for all hours worked for Defendants at the applicable minimum wage."; (2) "Wages and Overtime Subclass. All Class Members who were not compensated for all hours worked for Defendants at the required rates of pay, including for all hours worked in excess of eight in a day and/or forty in a week."; (3) "Meal Period Subclass. All Class members who were subject to Defendants' policy and/or practice of failing to provide unpaid 30-minute uninterrupted and duty-free meal periods or one hour of pay at the Employee's regular rate of pay in lieu thereof."; (4) "Rest Break Subclass. All Class members who were subject to Defendants' policy and/or practice of failing to authorize and permit Employees to take uninterrupted, duty-free, 10-minute rest periods for every four hours worked, or

major fraction thereof, and failing to pay one hour of pay at the Employee's regular rate of pay in lieu thereof."; (5) "Unlawful Withholding of Gratuities Subclass. All Class members who, within the applicable limitations period, were deprived of gratuities."; (6) "Wage Statement Subclass. All Class members who, within the applicable limitations period, were not provided with accurate itemized wage statements."; (7) "Unauthorized Deductions from Wages Subclass. All Class members who were subject to Defendants' policy and/or practice of deducting wages earned from their pay, including by requiring off the clock work."; (8) "Failure to Timely Pay Wages Twice Monthly Subclass. All Class members who were subject to Defendants' policy and practice of not timely paying all wages earned when they were due and payable at least twice monthly."; (9) "Termination Pay Subclass. All Class members who, within the applicable limitations period, either voluntarily or involuntarily separated from their employment and were subject to Defendants' policy and/or practice of failing to timely pay wages upon termination."; (10) Failure To Produce Requested Employment Records Subclass. All Class members who, within the applicable limitations period, were denied the right to inspect and receive all their payroll records, timecards, and personnel records."; (11) "Payroll Records Subclass. All Class members who were subject to Defendants' policy and/or practice of failing to keep accurate time and wage records as required by California wage-and-hour laws."; (12) "Expense Reimbursement Subclass. All Class members who incurred necessary and reasonable expenses in connection with performing their job duties for Defendants and who were subject to a policy and/or practice under which such expenses were not reimbursed."; (13) "UCL Subclass. All Class members who are owed restitution as a result of Defendants' business acts and practices, to the extent such acts and practices are found to be unlawful, deceptive, and/or unfair."

7. On or about January 11, 2024, the Superior Court of the State of California, County of San Francisco, issued an Order denying complex designation for failure to file application requesting designation, the Order was served on Plaintiff but was not served on Defendant. Attached hereto as **Exhibit F** is a true and correct copy of the Order issued by the Court.

8. On January 12, 2024, Defendant filed its Answer to the Complaint in San Francisco County Superior Court and served its Answer on Plaintiff that same day. Attached hereto as **Exhibit G** is a true and correct copy of Defendant's Answer to the Plaintiff's Complaint.

9. On or about February 9, 2024, Plaintiff filed an Application for Approval of Complex Designation and served the Application on Defendant that same day. Attached hereto as **Exhibit H** is a true and correct copy of Plaintiff's Application for Approval of Complex Designation.

10. On February 23, 2024, Plaintiff and Defendant stipulated to request the Court grant leave to Plaintiff to amend the Complaint to add a cause of action for penalties under the Private Attorneys General Act ("PAGA"). Plaintiff filed and served the Stipulation on Defendant that same day. Attached hereto as **Exhibit I** is a true and correct copy of the Stipulation for Leave to File First Amended Complaint and [Proposed] Order.

11. On or about March 5, 2024, the Superior Court of the State of California, County of San Francisco, issued an Order granting complex designation and assigning the matter to Honorable Andrew Y.S. Cheng for all purposes. The Order was served on Defendant that same day. Attached hereto as **Exhibit J** is a true and correct copy of the Order Granting Complex Designation And For Single Assignment.

12. On or about April 22, 2024, the Superior Court of the State of California, County of San Francisco, issued an Order granting Plaintiff leave to file the First Amended Complaint ("FAC"). The Order was served on Defendant that same day. Attached hereto as **Exhibit K** is a true and correct copy of the Order Granting Plaintiff Leave to Amend.

13. On or about April 22, 2024, Plaintiff filed the FAC in the Superior Court of the State of California, County of San Francisco, Case No. CGC-23-610836. Attached hereto as **Exhibit L** is a true and correct copy of the FAC. The FAC contains the same allegations and claims as the original Complaint filed by Plaintiff, with the addition of a claim for penalties under PAGA.

14. On or about May 7, 2024, Plaintiff and Defendant filed a Joint Case Management Conference Statement in the Superior Court of California for the County of San Francisco.

Attached hereto as **Exhibit M** is a true and correct copy of the Joint Case Management Conference Statement.

15. On or about May 9, 2024, the Superior Court of the State of California, County of San Francisco, issued an Order continuing the Case Management Conference. Attached hereto as **Exhibit N** is a true and correct copy of the Order Continuing Case Management Conference.

16. On June 7, 2024, Defendant filed its Answer to the FAC in San Francisco County Superior Court and served its Answer on Plaintiff that same day. Attached hereto as **Exhibit O** is a true and correct copy of Defendant's Answer to the Plaintiff's FAC.

17. **Exhibits A-O** are true and correct copies of all process, pleadings, and orders served upon Defendant or filed by Defendant in accordance with 28 U.S.C. § 1446(a). A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of San Francisco. No other proceedings have been held in this action.

## DIVERSITY JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

18. The Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is removable under CAFA, pursuant to the provisions of 28 U.S.C. §1441(a), as (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

19. Pursuant to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) and 28 U.S.C. § 1446(a), Defendant is not required to submit evidence establishing jurisdictional facts with a notice of removal. Defendant is only required to submit a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A plausible allegation of the relevant jurisdictional facts is sufficient in a notice of removal. *Dart Cherokee*, 135 S.Ct. 547 at 554. Evidence is required only if the plaintiff contests, or the Court questions, Defendant's allegations. *Id.*

**MINIMUM DIVERSITY EXISTS**

20. CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

21. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

22. Defendant is a corporation incorporated under the laws of Alaska. Defendant maintains its principal place of business in Washington. Defendant's corporate headquarters are located in Washington, and its administrative functions (including operations and planning) are conducted in Washington. Defendant's corporate and executive officers are employed in Washington and the actual direction, control, and coordination for Defendant take place in Washington. These facts were true at the time the action was instituted, and remain true today at the time of removal to federal court. Thus, under the foregoing standard Defendant is a citizen of Washington and Alaska for purposes of removal, and not a citizen of California.

23. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States, and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994).

24. Though the Complaint does not identify Plaintiff's residence, Plaintiff purports to represent a class of "[a]ll current and former employees ***within the State of California***" therefore

at least some of the putative class members are California residents, both at the time the action was initiated and now at the time of this removal because the putative class, which includes current employees, have residences in California. (FAC, ¶ 1.)

25. Moreover, Defendant independently determined based on its own business records that Plaintiff's last known address was in California. Therefore, Defendant alleges that at the date on which this civil action was filed, and at the time of this removal, Plaintiff was a citizen of California.

26. As such, at the date on which this civil action was filed, and at the time of this removal, at least one member of the putative class was a citizen of California and not a citizen of Washington or Alaska.

27. The presence of "Doe" defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b). Regardless, pursuant to CAFA, Defendant is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

**THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS**

28. Defendant employed at least 3,000 hourly employees who worked at least one day in California during the relevant time period. Accordingly, the Putative Class meets CAFA's requirement of a class containing at least 100 members.

**THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000**

29. Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *See Dart Cherokee*, 135 S. Ct. at 554 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). "In measuring the amount in controversy, a court must 'assume that the

allegations of the complaint are true and assume that a jury [will] return[] a verdict for the plaintiff on all claims made in the complaint.'" *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").

30. Plaintiff's pleading in this action fails to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis. Plaintiff's pleading is "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013).

31. Defendant alleges there is more than $5,000,000 in controversy, not including costs and/or interest sought by Plaintiff. Defendant provides the following calculations only to demonstrate that the amount in controversy in this case easily exceeds the jurisdictional amount in controversy under CAFA jurisdiction. Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims. Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of her claims.

32. <u>Unpaid Minimum Wage</u>: Plaintiff alleges that Plaintiff and the Putative Class members were not paid for the time they spent walking through the airport up to 15 minutes before their shifts and while returning from their meal periods. (FAC, ¶ 11). Plaintiff further alleges that she and the Putative Class members were habitually compelled to begin working before clocking in. (*Id.*, ¶ 13).

33. Plaintiff does not, however, provide any details as to how many hours per day or week she and the Putative Class members allegedly worked before clocking in without compensation. Although Defendant denies Plaintiff's allegations or that she or the Putative Class are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations, that employees worked, at minimum, one hour of unpaid work per week, which amounts to twelve minutes per shift worked.

34. Defendant independently determined based on its own business records that the Putative Class worked at least 350,000 weeks during the relevant time period.

35. Using a conservative assumption that each employee was paid at the hourly minimum wage in California in 2022 of $15, the amount in controversy for Plaintiff's claim for failure to pay minimum wages to Plaintiff and the Putative Class members is approximately **$5,250,000** (350,000 work weeks x $15 = $5,250,000), based on the failure to pay minimum wage cause of action.

36. For purposes of the amount in controversy, this number must be doubled, because Plaintiff claims an entitlement to liquidated damages under Cal. Labor Code § 1194.2. (FAC, ¶ 66). Cal. Labor Code § 1194.2 provides that "[i]n any action under Section 98, 1193.6, 1194, or 1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by an order of the commission or by statute, an employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and interest thereon," unless the employer "demonstrates to the satisfaction of the court or the Labor Commissioner that the act or omission giving rise to the action was in good faith and that the employer had reasonable grounds for believing that the act or omission was not a violation of any provision of the Labor Code…" When the alleged liquidated damages are accounted for, Plaintiff's minimum wage claim places at least **$10,500,000** in controversy ($5,250,000 x 2 = $10,500,000).

37. <u>Unpaid Overtime</u>: Much like her minimum wage claim, Plaintiff alleges that she and the Putative Class members were not paid for the time they spent walking through the airport up to 15 minutes before their shifts and while returning from their meal periods. (FAC, ¶ 11). Plaintiff further alleges that she and the Putative Class members were habitually compelled to

begin working before clocking in. (*Id.*, ¶ 13). Plaintiff alleges that Defendants followed an unlawful practice wherein managers allegedly "fixed" time records in a concerted effort to limit and restrict regular and overtime hours earned by and owing to Plaintiff and the other Class members. (*Id.*, ¶¶ 13, 14). Plaintiff also alleges that time worked off the clock also caused Plaintiff and other Class members to work beyond eight hours in a shift. (*Id.*, ¶ 14). As a result of the above-described off the clock work, Plaintiff alleges that Defendant failed to pay Plaintiff and Class members overtime for several minutes to hours at the end of work shifts which Defendant allegedly did not record in any timekeeping or payroll records. (*Id.*)

38. Plaintiff alleges that she and the Putative Class members generally worked over 50 hours per week, five to six shifts per week. (*Id.*, ¶ 10).

39. Plaintiff does not specify how many minutes or hours per day or per week she and the Putative Class members allegedly worked overtime without compensation. Although Defendant denies Plaintiff's allegations or that Plaintiff or the Putative Class members are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations, that employees worked, at minimum, one hour of unpaid overtime per week, which amounts to twelve minutes per shift worked.

40. In California, any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. *See* Labor Code § 510(a).

41. Using a conservative assumption that each employee was paid at the hourly minimum wage in California in 2022 of $15, the amount in controversy for Plaintiff's claim for failure to pay overtime wages to Plaintiff and the Putative Class members is approximately **$7,875,000** (350,000 work weeks x $15 x 1.5 overtime premium = $7,875,000), based on the failure to pay overtime wages cause of action.

42. <u>Waiting Time Penalties:</u> Plaintiff also alleges that Defendant failed to pay timely wages to Plaintiff and the Putative Class upon separation of employment, for which Defendant is

allegedly liable for waiting time penalties equal to one workday's wages for each day the wages were not paid, up to a maximum of 30 days' wages. (FAC, ¶ 70)

43. Cal. Labor Code § 201(a) requires an employer to pay a discharged employee all "wages due and unpaid at the time of discharge…immediately." Cal. Labor Code § 202(a) requires an employer to pay an employee who quits all outstanding earned wages within 72 hours of quitting, or at the time of quitting if the employee gave at least 72 hours' notice. Cal. Labor Code § 203(a) provides that "[i]f an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201…202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." The California Court of Appeal has interpreted Cal. Labor § 203 to provide for wages that would ordinarily be earned on 30 full workdays, even when the 30 day period after the earned wages of a quitting or discharged employee become due and are unpaid includes days that the employee would not have worked had they remained employed. *Mamika v. Barca*, 68 Cal. App. 4th 487, 489 (1998).

44. Because Plaintiff's section 203 waiting time penalty claim is derivative of her other allegations, it is reasonable to assume that every discharged or quitting employee had at least some alleged unpaid wages and therefore would be entitled to waiting time penalties for up to 30 days until this action was commenced, if Plaintiff prevails. *See Amezcua v. CRST Expedited Inc.*, 2023 WL 2002085, at *7 (N.D. Cal. 2023) (derivative waiting time allegations supports 100% assumed violation rate for purposes of removal*); see also Salonga v. Aegis Senior Communities, LLC*, 2022 WL 1439914, at *4 (N.D. Cal. 2022) ("[C]ourts in this district and others within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees."). Therefore every Putative Class member who was either discharged or quit more than 33 days prior

to the filing of this action would potentially accrue 30 days of waiting time penalties, if Plaintiff proves her allegations.[1]

45. Defendant independently determined based on its business records that at least 1,500 Putative Class members quit or were discharged during the relevant time period within three years prior to the filing of the complaint, but more than 33 days before the action was filed. Based on a minimum wage rate of $15/hour in effect in California in 2022 and a typical 8 hour workday, Plaintiffs' waiting time allegations place at least **$5,400,000** in controversy (1,500 discharged or quitting employees x $15/hour x 8 hours per day x 30 days = $5,400,000). Thus, by itself, Plaintiff's waiting time penalty claim exceeds the jurisdictional minimum.

46. <u>Other Causes of Action</u>: Plaintiff alleges numerous additional causes of actions, such as she and the Putative Class members were not provided meal and rest periods, provided accurate itemized wage statements, reimbursed for incurring necessary business expenses, and that Defendant failed to maintain employment and wage records, and withheld gratuities from the Putative Class members. (FAC, ¶¶ 13-26). However, the FAC is indeterminate as to the amount of business expenses allegedly incurred by Plaintiff and the Putative Class members, the numbers of meal and rest periods that were allegedly not provided, the amount of penalties sought by Plaintiff, and the amount of gratuities allegedly withheld. The alleged damages arising from these claims all add to the amount in controversy. Nevertheless, as outlined in detail above, the amount in controversy placed at issue by Plaintiff's other claims greatly exceeds the jurisdictional minimum under CAFA. Adding these claims increases the amount in controversy.

47. <u>Plaintiff's Claim for Attorneys' Fees</u>: For purposes of federal subject matter jurisdiction, "[t]he amount in controversy includes the amount of damages in dispute, as well as attorneys' fees, if authorized by statute or contract." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). The Ninth Circuit has held "that attorneys' fees were properly included in the amount in controversy in a class action." *Lowdermilk v. United States Bank Nat'l Assoc.*,

---

[1] The reason for 33 days prior to filing rather than 30 is that unpaid wages do not become due to a quitting employee under Cal. Labor Code § 202 for 72 hours after quitting, unless 72 hours' notice is given.

479 F.3d 994, 1000 (9th Cir. 2007) (abrogated on other grounds *by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558 (2013)).  In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.  Plaintiff's causes of action permit Plaintiff to recover attorneys' fees.  *See* Cal. Lab. Code §§ 226 & 1194; *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine.").  Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n.6), courts may use a 25% benchmark when calculating the attorneys' fees in controversy, including for claims arising under state law.  *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *see also Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *see also Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 483 (2016) (approving percentage of recovery measure of fees in common fund cases).

48. Based on the reasonable estimate of the amount in controversy placed at issue by only 3 out of 11 causes of action alleged in the FAC outlined above, a 25% fee award would exceed the minimum amount in controversy of $5,000,000 required by CAFA by itself ($23,775,000 amount in controversy x 25% = $5,943,750).

49. The amount in controversy requirement for CAFA is therefore easily satisfied.

**<u>NONE OF THE CAFA EXCEPTIONS APPLY</u>**

50. The CAFA statute includes a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)–(5).  However, none of these exceptions are applicable here.

51. The first is a discretionary exception under which a Court may decline to exercise jurisdiction if more than one-third of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state. 28 U.S.C. § 1332(d)(3). The second is a mandatory exception under which a Court shall decline to exercise jurisdiction if

more than two-thirds of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state. 28 U.S.C. § 1332(d)(3).

52. Here, the action was filed in California and Defendant is a citizen of Washington and Alaska for purposes of removal, and not a citizen of California. Therefore, these exceptions do not apply.

53. Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities or putative classes which number less than 100 in the aggregate. 28 U.S.C.§§ 1332(d)(5)(A)–(B). Given that Defendant is not a governmental entity, and the proposed class well exceeds 100 members, these exceptions also do not apply.

## SUPPLEMENTAL JURISDICTION

54. Under 28 U.S.C. § 1367(a):

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

55. To the extent the Court concludes it lacks original jurisdiction over any of Plaintiff's claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), since each of Plaintiff's causes of action emanate from and form part of the same "case or controversy" as Plaintiff's other claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Plaintiff's FAC. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal. 2007).

56. Here, the Court has supplemental jurisdiction over Plaintiff's non-class PAGA claim, because those claims emanate from and form part of the same "case or controversy" as Plaintiff's class claims, such that they should all be tried in one action. *See Nishimoto v.*

*Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Plaintiff's PAGA claim seeks to recover civil penalties arising from the same exact alleged wage and hour violations alleged in Plaintiff's class claims. *See Thompson v. Target Corp.*, 2016 WL 4119937, at *12 (C.D. Cal. 2016) ("Plaintiff's PAGA and class claims concern the same misconduct by Defendant and the PAGA claim is therefore properly within the Court's supplemental jurisdiction."). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the FAC. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock*, 2007 WL 1989635, at *3.

57. None of the exceptions to supplemental jurisdiction found in 28 U.S.C. § 1332(c) are applicable to this case. Plaintiff's PAGA claim does not raise novel or complex issues of State law different from the class claims, they do not substantially predominate over the named Plaintiff's individual claims, the class claims have not been dismissed, and there are no exceptional circumstances or compelling reasons for declining jurisdiction. The exceptions enumerated in 28 U.S.C. § 1332(c) are the exclusive grounds under which the Court may decline to exercise supplemental jurisdiction. *Exec. Software N. Am.*, 24 F.3d at 1556.

58. For these reasons the Court has supplemental jurisdiction over any claims pleaded by Plaintiff falling outside of the Court's original jurisdiction, including but not limited to Plaintiff's claim for civil penalties under PAGA, Labor Code §§ 2699, *et seq.* (FAC, ¶¶ 149-155).

## TIMELINESS OF REMOVAL

59. Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

60. When a pleading or paper is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the 28 U.S.C. § 1446(b) 30-day windows do not begin to run. *Id.* at 692–95. "[N]otice of removability under § 1446(b) is determined

through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* at 694. This reasoning was confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "Even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

61. It is well-settled that a pleading or paper that discloses grounds to remove on a basis other than CAFA does not start any deadline to remove under the jurisdiction conferred by CAFA. *See Kenny v. Wal-Mart Stores*, 881 F.3d 786, 791 (9th Cir. 2018) ("These general removal principles apply equally in the context of removals premised upon CAFA . . . 'a defendant may remove a case from state court within thirty days of ascertaining that the action is removable under CAFA, even if an earlier pleading, document, motion, order, or other paper revealed an alternative basis for federal jurisdiction.'") (quoting *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1180 (9th Cir. 2015)); *see also Castro v. ABM Industries, Inc.*, 2017 WL 4682816, at *3 (N.D. Cal. Oct. 19, 2017) (finding that defendant timely removed upon learning the amount in controversy was over $5 million from plaintiff's trial plan). *Jordan* also confirms that CAFA must be construed liberally in favor of removal. *Id.* at 1183–84.

62. *Roth* holds that the two 30-day windows in 28 U.S.C. § 1446(b) are not the exclusive times in which a defendant can remove. Thus, if a defendant never receives a pleading or other paper affirmatively disclosing the grounds for removal under CAFA, the defendant can remove under CAFA at any time. *Roth*, 720 F.3d at 1126 ("A CAFA case may be removed at any time, provided that neither of the two 30-day periods under § 1446(b)(1) and (b)(3) has been triggered."); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) ("[W]e will not 'charge defendants with notice of removability until [they have] received a paper that gives them enough information to remove'"); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.").

63. The only papers that start the second 30-day window under 28 U.S.C. § 1446(b) are those received from other parties in the litigation. *Calkins v. Google, Inc.*, 2013 WL 3556042, at *3 (N.D. Cal. 2013) ("[T]he plain language of the statute is clear that 'other paper' refers to a document received from another person or party in connection with the litigation."); *see also Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 284 (6th Cir. 2016) ("Every circuit to have addressed this issue has . . . adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper provided *by the plaintiff* to the defendant.") (original emphasis). That a defendant can discern or has discerned removability from its own records does not begin either of the non-exclusive 30-day windows for removal. *See Roth*, 720 F.3d at 1126; *see also Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *4 (C.D. Cal., 2015) ("The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law.") The Ninth Circuit in *Harris*, 425 F.3d at 495, adopted the following rule from the Fourth Circuit: "We will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents *exchanged in the case by the parties* to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." (quoting *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997)) (emphasis added).

64. None of Plaintiff's pleadings in this action, affirmatively disclosed a ground for CAFA removal. Thus, Defendant never received any pleading, motion, order, or other paper affirmatively disclosing that the amount in controversy in this action exceeds $5,000,000. Accordingly, the second 30-day window under 28 U.S.C. § 1446(b) has not yet started, therefore neither 30-day window have begun and for the foregoing reasons, this notice of removal is timely and otherwise procedurally proper.

65. This notice of removal filed on June 25, 2024 is therefore timely.

# JOINDER

66. Defendant is not aware of any other defendant that exists and who has been named in the FAC or who has been served with a summons and the Complaint or FAC. The only defendants named in Plaintiff's FAC are Defendant and fictitiously named Doe defendants, whose presence is disregarded for purposes of removal.

# VENUE

67. Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

# NOTICE TO PLAINTIFF AND STATE COURT

68. This Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of the State of California in and for the County of San Francisco.

69. In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as **Exhibits A through O.**

70. In the event this Court has any question regarding the Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to fully brief the basis for this removal and address any questions the Court may have.

WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of San Francisco to this Court.

Dated: June 25, 2024

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By  */s/ Paul S. Cowie*
PAUL S. COWIE
MELISSA HUGHES
JULIA G. REMER
Attorneys for Defendant
ALASKA AIRLINES, INC.